COMMONWEALTH vs. WILLARD E. BOHANNON, JR.

Plymouth. November 8, 1977. — July 25, 1978.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Evidence*, Impeachment of credibility. *Witness*, Credibility.

At a rape trial, the judge erred in excluding evidence of prior false
   accusations of rape made by the complainant where the credibility
   of the complainant as to whether she consented to the acts involved
   was the critical issue in the case, the evidence might have had a
   significant impact on the outcome of the trial, the defendant made
   an offer of proof which indicated that he had a factual basis for
   concluding that prior false accusations had been made, and the
   proposed questions in no way sought to elicit a response concerning
   the complainant's prior sexual activity or reputation for chastity.
   [92–96]

INDICTMENTS found and returned in the Superior Court
on January 24, 1975.

The cases were tried before *Dwyer, J.*

The Supreme Judicial Court granted a request for di-
rect appellate review.

*Fern L. Nesson* for the defendant.

*Helen Murphy Doona*, Assistant District Attorney, for
the Commonwealth.

ABRAMS, J. The defendant Willard E. Bohannon, Jr.,
was convicted after a jury trial of rape, kidnapping, com-
mission of an unnatural act, and assault and battery by
means of a dangerous weapon. He appeals these convic-
tions pursuant to G. L. c. 278, §§ 33A-33G. We conclude
that there must be a new trial.

We summarize the evidence presented at the trial. On
May 22, 1974, Bohannon, Robert Stonestreet, and a juve-
nile picked up the complainant who was hitchhiking to
Brockton. The group went to a liquor store where Stone-

street bought two quarts of beer. They then drove to a sandpit near Brockton. At trial, the complainant and the two codefendants, Bohannon and Stonestreet,[1] agreed that various sexual acts took place at the sandpit, but they disagreed sharply as to which defendant had done what and as to whether the complainant had consented to participate in these acts.

The complainant, the only witness that the Commonwealth presented on the issue of consent, was a thirty-three year old, mildly retarded woman with an I.Q. of 63. She testified that after they arrived at the sandpit Bohannon ordered her out of the car and that she complied. She stated that he then forcibly undressed her and pushed her down on the ground. She maintained that he then penetrated her briefly and forced her to commit fellatio. She testified that he also briefly inserted a bottle and a stick into her vagina. The complainant testified that Stonestreet had also raped her.

The complainant's testimony concerning the events of the night in question was inconsistent and confused. Her allegations concerning Bohannon were inconsistent with testimony she had earlier given in the District Court of Brockton and with her statements to the district attorney two days prior to trial. On these occasions she had stated that Bohannon had not raped her. When she was asked on cross-examination to explain this inconsistency, the complainant stated that she had recently seen "in a mist" that Bohannon had penetrated her. Her testimony concerning Stonestreet was also inconsistent. In the District Court, prior to trial, and at the trial, the complainant had maintained that Stonestreet had raped her. However, after her trial testimony was concluded, she informed the district attorney that she was now uncertain as to whether Stonestreet was involved. When recalled by the district attorney, the complainant testified that Stonestreet had not raped her.

---

[1] Bohannon and Stonestreet were tried together. The juvenile was apparently tried separately, and Stonestreet's case is not before us.

Both Bohannon and Stonestreet testified at the trial. They asserted that the complainant consented to the sexual activities which had occurred. Bohannon testified that he asked her to get out of the car with him and she did. He stated that she then voluntarily performed fellatio on him and undressed. They lay down together outside the car, but he was unable to have intercourse. Bohannon testified that the complainant then became annoyed, and he tried using a beer bottle for a few seconds. Then the complainant handed him a stick and said, "Use this." After a while she asked him to bring over his friends. Both Stonestreet and the juvenile then came over. Stonestreet testified that the complainant left the car voluntarily with Bohannon and that she appeared to acquiesce in the acts involved. He stated that the complainant had invited him to participate, but that he had been unwilling. He denied that he engaged in intercourse with her.

Medical evidence of the injuries sustained by the complainant indicated a small cut on the cervix which slowly oozed blood for several hours and a bruise on her eye. No evidence of sperm was found.

The central focus of the trial was the credibility of the complainant, particularly in connection with the issue of consent. During the cross-examination of the complainant, defense counsel requested a bench conference to determine whether it was permissible to ask her the following questions: "[w]hether or not she has prior to this made accusations that other men have raped her, and how many times, if the answer is yes, she has made these accusations."[2] In support of the propriety of these ques-

[2] Although a request for a voir dire might have been preferable, we note our approval of the procedure followed in this case. When it is unclear whether a question in a particuarly sensitive area is proper, the procedure of seeking a determination of the question's propriety at the bench before asking the question should be followed. In particular, a voir dire or this practice must be followed when the question is in any way connected with the witness's past sexual conduct. See G. L. c. 233, § 21B, inserted by St. 1977, c. 110.

tions, defense counsel made an offer of proof that, according to hospital records, the complainant had made a number of unsubstantiated, and apparently false, accusations of rape. The trial judge concluded that the questions could not be asked. The correctness of this determination is the sole issue presented for review.

In general, evidence of prior bad acts may not be used to impeach a witness's credibility.[3] One clear exception to this general rule is that records of criminal convictions may be used to impeach credibility. See *Commonwealth v. Cheek*, 374 Mass. 613, 615 (1978); *Commonwealth v. Clifford*, 374 Mass. 293, 305 (1978); *Commonwealth v. Binkiewicz*, 342 Mass. 740, 755 (1961); *Jones v. Commonwealth*, 372 Mass. 491, 494 (1951); *Commonwealth v. Schaffner*, 146 Mass. 512, 515 (1888); W. B. Leach & P.J. Liacos, Massachusetts Evidence 121-123 (4th ed. 1967). Evidence of prior false allegations has been excluded as a consequence of this general rule. *Miller v. Curtis*, 158

---

[3] The defendant contends that the purpose of the proposed cross-examination was to demonstrate bias on the part of the witness. If such were the case, the defendant would be entitled as a matter of right to reasonable cross-examination for the purpose of showing this bias. *Commonwealth v. Cheek*, 374 Mass. 613, 615 (1978). *Commonwealth v. Ahearn*, 370 Mass. 283, 287 (1976). *Commonwealth v. Graziano*, 368 Mass. 325, 330 (1975). *Commonwealth v. Michel*, 367 Mass. 454, 459 (1975). See *Commonwealth v. Ferrara*, 368 Mass. 182 (1975); *Davis v. Alaska*, 415 U.S. 308 (1974). The defendant argues that since the complainant was returned to the hospital each time her mother thought she had sexually misbehaved, she thought she might persuade her mother to allow her to remain at home if she could convince her mother that she was raped. Thus, the defendant maintains that a rape charge and conviction are more in the complainant's personal interest than is generally true. The defendant, however, did not bring the bias aspects of his proposed cross-examination to the attention of the judge and the fact that the purpose of the questions was to demonstrate bias was not clear from the questions themselves. Therefore we consider the cross-examination as directed to credibility only. See *Commonwealth v. Cheek, supra* at 615; *Commonwealth v. Ahearn, supra* at 286. See also *Pires v. Commonwealth*, 373 Mass. 829, 838 n.5 (1977); *Commonwealth v Caine*, 366 Mass. 366, 370 n.4 (1974).

Mass. 127 (1893). *Commonwealth* v. *Regan*, 105 Mass. 593 (1870).

In the *Miller* opinion, however, we indicated that the rule was not inflexible and that there might be cases presented in which such evidence might be competent. *Miller* v. *Curtis, supra* at 131. We conclude that this is such a case. When evidence concerning a critical issue is excluded and when that evidence might have had a significant impact on the result of the trial, the right to present a full defense has been denied.[4] See *Chambers* v. *Mississippi*, 410 U.S. 284 (1973); *Commonwealth* v. *Chase*, 372 Mass. 736, 740-748 (1977); *Commonwealth* v. *Franklin*, 366 Mass. 284, 288-291 (1974); *United States* v. *Nixon*, 418 U.S. 683, 707-713 (1974). See generally *Commonwealth* v. *Ahearn*, 370 Mass. 283 (1967); *Commonwealth* v. *Graziano*, 368 Mass. 325, 329-331 (1975); *Commonwealth* v. *Ferrara*, 368 Mass 182, 186-190 (1975); *Davis* v. *Alaska*, 415 U.S. 308 (1974); *State* v. *DeLawder*, 28 Md. App. 212 (1975).

The credibility of the complainant was the critical issue in the present case. The central issue in dispute was whether she consented to the acts involved, and the complainant, as in most cases of this type, was the only Commonwealth witness on the issue of consent. See *Commonwealth* v. *Graziano, supra* at 329-330; *Commonwealth* v. *Franklin, supra* at 288-291; *State* v. *DeLawder, supra* at 226-228.

Evaluations of credibility are, of course, within the exclusive province of the trier of fact. The defendant sought

---

[4] The defendant did not raise this particular argument at the trial as a ground for allowing his proposed questions. Ordinarily he would therefore be precluded from raising this argument for the first time on appeal. See *Commonwealth* v. *Flynn*, 362 Mass. 455, 472 (1972). However, when there is a substantial risk of a miscarriage of justice, we will examine the merits of arguments even though they were not raised in the trial court. See *Commonwealth* v. *Harris*, 371 Mass. 462, 471-472 (1976); *Commonwealth* v. *Barton*, 367 Mass. 515 (1975); *Commonwealth* v. *Freeman*, 352 Mass. 556, 561-564 (1967); *Commonwealth* v. *Conroy*, 333 Mass. 751, 756-757 (1956).

by his questions to bring to the jury's attention the fact that the complainant had made false allegations of rape on several occasions in the past. Evidence of prior false accusations of the specific crime which is the subject of the trial might itself have seriously damaged the complainant's credibility. Moreover, in this case the possibility that this evidence might have had a significant impact on the issue of credibility is enhanced by the fact that the complainant's testimony was inconsistent and confused. See *Commonwealth* v. *Franklin, supra* at 290. Thus the proffered evidence, if believed, might have had a significant impact on the issue of consent and consequently on the outcome of the trial. In the circumstances of this case, we therefore think the exclusion of the defendant's proposed questions violated his right to present his defense fully.

We wish to stress two features of the present case which are relevant to the decision we have reached. First, the defendant made an offer of proof which indicated that he had a factual basis from independent third party records for concluding that prior allegations of rape had, in fact, been made and were, in fact, untrue. It is particularly important that when a proposed question even remotely connected with sexual conduct is to be asked "the cross-examiner should have a reason for asking any such questions and should be prepared to disclose that reason to the judge." *Commonwealth* v. *White,* 367 Mass. 280, 284 (1975). See *Commonwealth* v. *Carr,* 373 Mass. 617 (1977).

Second, the proposed questions dealt with prior allegations of rape; they in no way sought to elicit a response concerning the complainant's prior sexual activity or reputation for chastity. We, therefore, do not reach any issues related to the recently enacted "rape-shield" statute, G. L. c. 233, § 21B, inserted by St. 1977, c. 110. Nor should this decision be viewed as indicating any adherence to that "part of a legal tradition, established by men, that the complaining woman in a rape case is fair game for character assassination in open court." *Common-*

*wealth* v. *Manning,* 367 Mass. 605, 613-614 (1975) (Braucher, J., dissenting). We firmly reject approval of any evidentiary rule which is grounded in a mistrust of women rather than in logic.

The judgments are reversed, the verdicts are set aside and the cases are remanded for a new trial.

*So ordered.*