COMMONWEALTH *vs.* JOHN DOE.

Hampden.   April 25, 1979. — August 22, 1979.

Present: ARMSTRONG, GREANEY, & KASS, JJ.

*Evidence*, Identity, Impeachment of credibility. *Witness*, Impeachment.

At the trial of a defendant for various sex offenses against his eleven year old adopted daughter and his eight year old natural daughter, the defendant was not entitled to a directed verdict by the Commonwealth's failure to ask any of its witnesses, including the victims, to identify the defendant as the person about whose criminal activities they were testifying where there was sufficient evidence to warrant an inference that the defendant was the "father" of whom the victims spoke. [299-300]

At the trial of a defendant charged with the rape of his eleven year old adopted daughter, the judge did not err in excluding testimony of a seventeen year old witness that, approximately a year before the alleged commission of the crimes being tried, he had babysat for the victim and three other children, that on the following day the victim's mother had accused him of having sex with the victim, and that the victim denied having made the accusation and said that her sister had told her mother, where the offer of proof failed to show that the victim had made the accusation, that the accusation was false, or that it suggested a pattern of similar accusations. [300-302]

At the trial of a defendant charged with rape of his eleven year old
    adopted daughter, the testimony of a doctor who had examined the
    victim was at most merely cumulative of the victim's testimony and
    could not have prejudiced the defendant. [302]
At a criminal trial, evidence that the defendant had attempted to
    commit suicide immediately after he was bound over to the grand
    jury was admissible as evidence of consciousness of guilt. [302]

INDICTMENTS found and returned in the Superior Court
on April 13, 1977.

The cases were tried before *Jablonski*, J., a District
Court judge sitting under statutory authority.

*Arthur D. Serota* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the
Commonwealth.

ARMSTRONG, J. The defendant appeals from his convic-
tions on four indictments: rape and abuse of a child under
sixteen years of age (G. L. c. 265, § 23); incest (G. L. c. 272,
§ 17); indecent assault and battery on a child under four-
teen years of age (G. L. c. 265, § 13B); and being a lewd,
wanton, and lascivious person in speech or behavior (G. L.
c. 272, § 53).[1] The convictions were supported by evi-
dence that the defendant had engaged in an act or acts of
intercourse with his then eleven year old adopted daugh-
ter A. and in sexual activity falling short of intercourse
with his then eight year old natural daughter B.[2] The

---

[1] The defendant was not sentenced on the indictment last men-
tioned (being a lewd, wanton, and lascivious person in speech or behav-
ior); rather, the indictment was filed with the defendant's express
consent. In this situation an appeal ordinarily does not lie, *Common-
wealth* v. *Delgado*, 367 Mass. 432, 437-438 (1975); but, because the
defendant has elected to pursue the appeal at this time and the issues
which have been argued are largely common to all the indictments,
we think that all the appeals should be disposed of together. Compare
*Commonwealth* v. *Boone*, 356 Mass. 85, 88 (1969); *Commonwealth* v.
*Courtney*, 7 Mass. App. Ct. 4, 8 (1979). Contrast *Commonwealth* v.
*Hoffer*, 375 Mass. 369, 370 n.1 (1978).

[2] The defendant does not contend that the crime of incest is confined
to sexual intercourse with natural children and does not apply to
intercourse with adopted children. We accordingly do not consider the
question, although we note, in passing, that courts in which the ques-

defendant contends that the trial judge should have allowed the defendant's motion for directed verdicts made at the close of the Commonwealth's case and that the judge erred in four evidentiary rulings.

The motion for directed verdicts of not guilty was based on the Commonwealth's failure to ask any of its witnesses, including A. and B., to identify the defendant John Doe who was sitting in the courtroom as the person about whose criminal activities they were testifying. The principle relied on seems to be that bald identity of name without confirmatory facts or circumstances is insufficient to prove identity of person. *Herman* v. *Fine,* 314 Mass. 67, 68-69 (1943), and cases cited. The point is purely technical, for the defendant himself later testified and acknowledged that he was the father of whom A. and B. spoke; but the motion for directed verdicts was made at the close of the Commonwealth's evidence, and the rule applicable in criminal cases is that the correctness of the judge's ruling on the motion must be measured by the evidence introduced up to that point and may not take into account the evidence introduced thereafter. *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 (1976). *Commonwealth* v. *Chinn,* 6 Mass. App. Ct. 714, 715 n.1 (1978). Slight confirmatory evidence is needed to establish identity of persons where there is identity of names. *Nugent* v. *Popular Mkts., Inc.*, 353 Mass. 45, 47 (1967). Each of the indictments described the defendant as being an inhabitant of the town of Hampden, and two of the Commonwealth's witnesses, the daughters A. and B., testified that

tion has arisen generally construe statutes defining incest to require a blood relationship. See, e.g., *State* v. *Lee,* 196 Miss. 311, 314-315 (1944); *State* v. *Rogers,* 260 N.C. 406, 409 (1963); *Ohio* v. *Youst,* 74 Ohio App. 381 (1943). In other contexts it has been held that an "essential element" of incest is "consanguinity." *Commonwealth* v. *Haywood,* 247 Mass. 16, 20 (1923). The point is probably without significance to the defendant, because the sentence imposed on the incest indictment was equal to, and ran concurrently with, the sentence imposed on the rape indictment.

their home, which was also the home of their father, had been in Hampden.[3] Compare *Commonwealth* v. *Hollis*, 170 Mass. 433, 436 (1898); *Ayers* v. *Ratshesky*, 213 Mass. 589, 594-595 (1913); *Baker, petitioner*, 310 Mass. 724, 731-732, cert. denied sub nom. *Baker* v. *Delay*, 316 U.S. 699 (1942). In addition the defendant, in cross-examination of A. and B., introduced in evidence the originals of letters written by them to their father. As the letters could only have been produced by the father (compare *Nugent* v. *Popular Mkts., Inc.*, 353 Mass. at 47), the unexplained possession and control of those letters by the defendant, who was of the same name and resided in the same town as the father, warranted an inference that the father and the defendant were the same person. "It is not necessary that any one witness should distinctly swear that the defendant was the man, if the result of all the testimony, on comparison of all its details and particulars, should identify him as the offender." *Commonwealth* v. *Cavanaugh*, 7 Mass. App. Ct. 33, 36 (1979), quoting *Commonwealth* v. *Cunningham*, 104 Mass. 545, 547 (1870). The defendant's motion for directed verdicts was correctly denied.

The defendant next contends that an evidentiary ruling by the trial judge ran afoul of *Commonwealth* v. *Bohannon*, 376 Mass. 90 (1978), in which the Supreme Judicial Court held that, in the circumstances there presented, a rape defendant was entitled to put before the jury evidence of prior false accusations of rape by the complaining witness. The latter was a retarded woman whose testimony was confused and inconsistent, and the court emphasized that the defendant, according to his offer of proof, intended to prove the prior false accusations by "independent third party records"; but it is not entirely clear from the opinion that either fact was intended to limit the application of the principle on which the case

---

[3] According to the 1975 State Census, the population of Hampden was 4,751.

was said to turn, which was stated in broad terms.[4] The court did not purport to overturn the general rules that "evidence of prior bad acts may not be used to impeach a witness's credibility ... [, and] [e]vidence of prior false allegations has been excluded as a consequence of this general rule." *Commonwealth* v. *Bohannon*, 376 Mass. at 93. See also *Commonwealth* v. *Regan*, 105 Mass. 593 (1870); *Miller* v. *Curtis*, 158 Mass. 127 (1893).

The *Bohannon* issue arose twice during the trial and involved two rulings by the judge, but we confine our attention to the instance in which the defendant took an exception to the judge's ruling. The defendant proposed to call as a witness one X., who was then seventeen years old. The offer of proof was that X. would testify that in the summer of 1975, approximately a year before the alleged commission of the crimes being tried, he babysat on one occasion for A., B., and two younger children. The following day the mother (who was killed in an automobile accident in late 1976) confronted X. at a Jehovah's Witnesses' Kingdom Hall and accused him of "having sex" with A. A short time later X. "confronted A. and said, 'What have you been telling your mother about that I have been making love to you and that I have raped you?" A. "denied that and said that her sister B. had told her mother that." That was the entire content of the offer of proof.[5] It is notable for two crucial omissions: namely, evidence that A. made an accusation, and evidence that

[4] "When evidence concerning a critical issue is excluded and when that evidence might have had a significant impact on the result of the trial, the right to present a full defense has been denied.... The credibility of the complainant was the critical issue in the present case." *Commonwealth* v. *Bohannon*, 376 Mass. at 94.

[5] In an earlier bench conference with the judge, which was not denominated as an offer of proof, counsel for the defendant sought to cross-examine A. about this episode and gave the judge a substantially different version of the episode from what appeared in the formal offer of proof. The judge was under no obligation to supplement the formal offer of proof with additional or varying elements taken from defense counsel's remarks on the earlier occasion.

the accusation made by others was false. It also fell short of suggesting a pattern of similar accusations, as did the offer of proof in the *Bohannon* case. Compare McCormick, Evidence § 196, at 466 & n.4 (2d ed. 1972). We cannot say that the judge abused his discretion, on the basis of this offer of proof, in refusing to admit the testimony of X.

The doctor who examined A. after her allegation concerning the defendant's conduct had become known gave an account of her physical examination of A. Her findings were couched in dry, somewhat technical language and were not linked up in any substantial way, either positively or negatively, to the issues at trial. But she was permitted to relate, over objection, that "[i]n an attempt to determine the degree of penetration of the vagina by history, . . . I inserted my finger, index finger, in the vagina, and . . . A. admitted to approximately one inch penetration, as demonstrated by my index finger." A. had previously testified to four occasions on which, she maintained, the defendant had "put his penis in my vagina." We do not decide whether the doctor's somewhat obscure statement was properly admitted; it was at most merely cumulative of A.'s more colorful testimony and could not have had any prejudicial effect on the jury. Compare *Commonwealth* v. *Howard*, 355 Mass. 526, 530 (1969); *Commonwealth* v. *Izzo*, 359 Mass. 39, 43 (1971); *Commonwealth* v. *Blow*, 370 Mass. 401, 404 (1976); *Commonwealth* v. *Coolbeth*, 4 Mass. App. Ct. 855 (1976).

The evidence that the defendant had attempted to commit suicide immediately after the clerk of the District Court in Palmer announced that he was bound over to the grand jury was admissible as evidence of consciousness of guilt. *Commonwealth* v. *Goldenberg*, 315 Mass. 26, 33 (1943), is directly in point. No objection lay to Officer Chaput's apparently mistaken recollection of the words used by the clerk. The officer's confusion was exposed on cross-examination, and the judge gave prompt curative instructions. There was no prejudice.

The judgments on the indictments numbered 77-1239, 77-1243 and 77-1244 (i.e., the indictments on which sentences were imposed) are affirmed. The verdict on the indictment numbered 77-1241 (i.e., the indictment which was filed) is to stand.

*So ordered.*