Commonwealth v. LaVelle.

COMMONWEALTH vs. JOSEPH E. LAVELLE.

No. 91-P-431.

Middlesex. January 10, 1992. - July 23, 1992.

Present: FINE, JACOBS, & PORADA, JJ.

Further appellate review granted, 413 Mass. 1104 (1992).

*Evidence*, Cross-examination, Prior misconduct, Bias, Impeachment of credibility. *Witness*, Police informer, Cross-examination, Bias, Impeachment.

At a criminal trial, the judge properly excluded evidence proffered by the defendant that consisted of false accusations by the chief prosecution witness, a police informant, made in connection with another court proceeding, where the prior incident did not involve the specific crimes (distribution of a counterfeit controlled substance) with which the defendant was charged and thus was not material and relevant with respect to the witness's credibility. [39-41] FINE, J., dissenting.

At a criminal trial the judge properly excluded certain evidence proffered by the defendant allegedly to show bias or to impeach a witness [41-42]; and the judge properly admitted certain evidence with respect to the use of a police informant [42-43].

There was no merit to a criminal defendant's claim that the indictments against him should have been dismissed because hearsay evidence was presented to the grand jury. [43]

INDICTMENTS found and returned in the Superior Court Department on June 25, 1987.

The cases were tried before *James D. McDaniel, Jr.*, J.

*John H. LaChance* for the defendant.

*Howard A. Wise*, Assistant District Attorney, for the Commonwealth.

JACOBS, J. The defendant appeals from his convictions by a Superior Court jury on two indictments for distribution of a counterfeit controlled substance. G. L. c. 94C, § 32G. His argument focuses largely on claimed errors in the admission and exclusion of evidence. We affirm.

Two Framingham police officers, Detectives Shastany and Davis, and a former undercover informant, John Robinson,

were the only witnesses for the prosecution. Robinson testified in some detail of seeking the defendant out in mid-October 1986, as a possible source of drugs and later that month making two separate "cocaine" purchases from him[1] at Jessica's, a nightclub in Framingham. The purchased material proved to be counterfeit. Both purchases were supervised by the police officers who directed that Robinson attempt to make the purchases from the defendant and "controlled" the situation by providing Robinson with money for the purchase and searching him and his automobile before and after each buy. The police officers also received the purchased material from Robinson and "debriefed" him concerning the details of the purchases. They offered no independent evidence, however, of the defendant's presence at Jessica's at the time of the purchases. Thus, Robinson's testimony comprised the only evidence of the defendant's involvement with the counterfeit substance. Robinson also testified that the defendant drove into Robinson's driveway following being charged in this case with distributing counterfeit drugs and, after telling Robinson that what he was doing was wrong said, "You've just got to be careful of your family." Robinson stated that he reported to Detective Shastany that the defendant had threatened him.[2] This episode was mentioned by both counsel in their opening statements and the prosecutor, in his closing argument to the jury, twice referred to the defendant's having threatened Robinson.

The prosecution, over objection, introduced evidence of Robinson's history of undercover work and high-minded motivation for helping the police. Defense counsel, during extensive cross-examination, impeached Robinson with his record of felony convictions, use of aliases, receipt of money from the police for participating in other cases, and his filing of a false newspaper report of his son's having been killed in an

---

[1] Robinson testified to one purchase and one replacement transaction which followed his complaint about the poor quality of the first purchase. The distinction is immaterial to our discussion; both transactions therefore are denominated "purchases" for ease of reference.

[2] There is no indication in the record that the defendant was charged with the crime of intimidating a witness. G. L. c. 268, § 13B.

accident. He stated that he filed the false report because he "was getting a lot of threatening phone calls and people were coming to the house . . . . I just wanted to protect him at that time." Robinson also confirmed that he had been "honest and truthful with [the police] at all times in matters relating to [his undercover] investigations." Detective Shastany was permitted to testify, over objection, that he and Detective Davis had elicited background information from Robinson prior to using him in police work.

During cross-examination of both Robinson and Detective Shastany, defense counsel unsuccessfully attempted to obtain the judge's permission to inquire about an incident which had occurred less than three months after Robinson claimed he had been threatened by the defendant.[3] The incident had been the subject of a voir dire hearing immediately preceding the trial, during which Detective Shastany and another police officer testified and submitted affidavits. They testified that Robinson informed them he had been assaulted in his backyard by three men who made statements to him which he interpreted as warnings not to appear in a pending court proceeding.[4] Approximately four hours later he admitted to the police that he had fabricated the entire story. After the hearing, defense counsel argued for the admissibility of evidence of the incident on the basis of (1) its tendency to prove Robinson's bias or his close relationship with the police, (2) the defendant's constitutional right of confrontation and, (3) the potential impeaching effect on the credibility of Robinson. He claimed that the prosecution's total reliance on Robinson's testimony to implicate the defendant created a unique circumstance warranting admission of the evidence. The judge rejected the argument, but without prejudice to its

---

[3]The judge preserved the defendant's objections to the prohibition of the proposed cross-examination.

[4]A police officer who investigated the incident testified that Robinson said his assailants told him "not to show up on twenty-two or he wouldn't see twenty-three . . . ." He further testified that Robinson told him that the statement related to a court day and that he was being threatened with respect to one of the investigations in which he had participated. There is no evidence that the court day referred to was related to this case.

being pressed during trial. He stated that no bias had been shown and that the incident was a prior bad act unconnected to the issues in the case. At trial, the defendant's case consisted entirely of his own testimony. He unequivocally denied dealing with Robinson or ever appearing at his home.

It is well established that "[s]pecific acts of prior misconduct of the witness . . . not material to the case in which [the witness] testifies cannot be shown by the testimony of impeaching witnesses or other extrinsic evidence to affect [the witness's] credibility." Liacos, Massachusetts Evidence 149 (5th ed. 1981 & Supp. 1985). *Miller* v. *Curtis,* 158 Mass. 127, 131 (1893). *Commonwealth* v. *Andrews,* 403 Mass. 441, 459 (1988). The limitation encompasses cross-examination of the witness. *Commonwealth* v. *Turner,* 371 Mass. 803, 809-810 (1977). The general rule is not inflexible, however, and the possibility of exceptions has long been recognized. *Miller* v. *Curtis, supra* at 130. *Commonwealth* v. *Bohannon,* 376 Mass. 90 (1978), carved out such an exception. In *Bohannon,* the defendant was charged with rape and the defense was consent. The Supreme Judicial Court held it to be error to exclude evidence of the victim's prior false allegations of rape. The "special circumstances" of *Bohannon* were that "the witness was the victim in the case on trial, her consent was the central issue, she was the only Commonwealth witness on that issue, her testimony was inconsistent and confused, and there was a basis in independent third-party records for concluding that the prior accusations of the same type of crime had been made and were false." *Commonwealth* v. *Sperrazza,* 379 Mass. 166, 169 (1979).

The defendant argues that elements of this case sufficiently parallel the special circumstances of *Bohannon* to require admission of the evidence of Robinson's false claim. Here, as in *Bohannon,* the credibility of one person, the only witness to the crime, was the linchpin to the prosecutor's case. Additionally, there was uncontroverted evidence of that witness's having made a false accusation of threats prior to trial. The defendant contends that evidence of that false accusation assumes critical importance in light of Robinson's testimony,

likely to be given great weight by the jury, accusing the defendant of threatening him.

The defendant's argument fails to recognize that the *Bohannon* "exception to the general rule barring evidence of prior false accusations is a narrow one," *Commonwealth* v. *Hicks*, 23 Mass. App. Ct. 487, 489 (1987), involving specific and special circumstances. See *Commonwealth* v. *Sperrazza*, *supra* at 169. Two of those special circumstances are missing from this case. The testimony of Robinson was neither inconsistent nor confused. More importantly, the false accusation in issue did not involve "the specific crime which is the subject of the trial." *Commonwealth* v. *Bohannon, supra* at 95. It bore, instead, upon a collateral, albeit important issue, the credibility of Robinson's accusations of threats.

We are aware of no appellate decision in this jurisdiction, since *Bohannon*, allowing impeachment by a prior false accusation which does not involve the same type of crime as that with which the defendant is charged. In fact, the cases can be read to require a "series or pattern of false accusations" of the same crime. *Commonwealth* v. *Hicks*, 23 Mass. App. Ct. at 490. See *Commonwealth* v. *Doe*, 8 Mass. App. Ct. 297, 302 (1979); *Commonwealth* v. *Blair*, 21 Mass. App. Ct. 625, 629 n.8 (1986).

The defendant nevertheless argues that the evidence in question "struck at the heart of the only real issue of the trial," Robinson's credibility, and, therefore, was so critical to his case that its exclusion deprived him of his constitutional right to present a full defense. The *Bohannon* court underscored the constitutional dimensions of the questions raised by the general rule excluding prior false allegations:

> "When evidence concerning a critical issue is excluded and when that evidence might have had a significant impact on the result of the trial, the right to present a full defense has been denied. See *Chambers* v. *Mississippi*, 410 U.S. 284 (1973); *Commonwealth* v. *Chase*, 372 Mass. 736, 740-748 (1977); *Commonwealth* v. *Franklin*, 366 Mass. 284, 288-291 (1974); *United*

*States* v. *Nixon*, 418 U.S. 683, 707-713 (1974)." *Commonwealth* v. *Bohannon, supra* at 94.

As a general proposition, "[t]he admissibility of . . . evidence of prior bad acts lies in large measure in the discretion of the trial judge." *Commonwealth* v. *McGeoghean*, 412 Mass. 839, 841 (1992).[5] See *Commonwealth* v. *Sherry*, 386 Mass. 682, 693 (1982); *Commonwealth* v. *McDonough*, 400 Mass. 639, 651 (1987). Even if we assume, without deciding, that the *Bohannon* exception might, in appropriate circumstances, include prior false accusations which do not involve the same type of conduct as that with which a defendant is charged,[6] the initial assessment of the materiality and relevance of the proffered evidence in this case nevertheless must be left to the discretion of the trial judge. It is apparent from his statements during the voir dire hearing that the judge was well aware of the narrow compass of the *Bohannon* exception.[7] He was in the best position to determine whether the evidence of Robinson's prior false claims was sufficiently disconnected from the issues and cumulative of other impeachment evidence that its exclusion would not strike a critical blow to the defendant's ability to present a full defense. In the circumstances, we believe the judge acted within his discretion.

We treat briefly the other grounds advanced by the defendant for the admission of Robinson's prior false claims.

---

[5]A substantial degree of discretion is also permitted under Fed.R.Evid. 608(b) which allows for cross-examination of a witness concerning his character for truthfulness or untruthfulness. *United States* v. *Fortes*, 619 F.2d 108, 118 (1st Cir. 1980).

[6]There have been occasions where limitations of cross-examination concerning prior witness misconduct dissimilar in nature to the crime charged have been upheld and in which the court expressly indicated an absence of features or facts such as were present in *Bohannon.* See *Commonwealth* v. *Sperrazza*, 379 Mass. 166, 169 (1979); *Commonwealth* v. *Andrews*, 403 Mass. 441, 459 (1988).

[7]With reference to the attempt to impeach Robinson with evidence of his prior false claim of attack and threat, the judge stated: "Prior bad acts can only be admitted for very special reasons, as you know, specific reasons and only if they are not too remote in time and they are connected with the issues in the case."

He argues that this evidence would be probative of Robinson's bias by demonstrating his closeness to the police and his awareness of the possibility of his being prosecuted for making a false report of a crime. G. L. c. 269, § 13A. The defendant utilized his right of cross-examination to explore several aspects of Robinson's relationship with the police. He established that Robinson was "friendly" with the police, had participated in approximately twenty investigations, and had received money for his investigative work. "The right to cross-examine to show bias or prejudice is not necessarily infringed by curbing inquiry if the matter sought to be elicited has been sufficiently aired." *Commonwealth* v. *Gonzalez*, 23 Mass. App. Ct. 913, 914 (1986), citing *Commonwealth* v. *Hicks*, 377 Mass. 1, 8 (1979). See *Commonwealth* v. *Jackson*, 388 Mass. 98, 112 (1983).

There is no evidence that Robinson might have been under any influence to testify falsely as a result of theoretically being subject to prosecution for making a false claim of having been attacked. The voir dire testimony indicated that the police never gave serious consideration to prosecuting Robinson for making a false report of a crime. Moreover, since no charges were filed during the nearly fifteen months between the incident and the trial, it was unlikely that Robinson feared prosecution at that later time. The judge ruled that no bias had been shown. "[W]hen the evidence of bias is as attenuated as here, the discretion of the trial judge in ruling on its admission is broad." *Commonwealth* v. *Gonzalez*, *supra* at 914. *Commonwealth* v. *Haywood*, 377 Mass. 755, 761 (1979).

The defendant contends that evidence of the incident would also have contradicted Robinson's claim of honest and truthful relations with the police. Not only is the connection highly attenuated, but the defendant has not shown how he was prejudiced, given the ample impeachment he was permitted. Again, we find no abuse of discretion. See *Commonwealth* v. *Sherry*, 386 Mass. 682, 693 (1982).

The defendant also claims the judge committed error in permitting Detective Shastany to testify to background infor-

mation regarding Robinson and the general investigation in
which he was involved. The admission of background infor-
mation falls generally within the judge's discretion. To the
extent the testimony included out-of-court statements, it was
properly admitted as revealing the state of police knowledge
which led to the use of Robinson as an informant. *Common-
wealth* v. *Miller*, 361 Mass. 644, 659 (1972). The defend-
ant's claim of error in the denial of his motion to dismiss,
which was based largely on the use of hearsay before the
grand jury, is also without merit. See *Commonwealth* v. *St.
Pierre*, 377 Mass. 650, 654-661 (1979).

*Judgments affirmed.*

FINE, J. (dissenting). I would award the defendant a new
trial because I think it was error, in the circumstances, to
exclude evidence that Robinson had reported to the
Framingham police, falsely, that he had been threatened and
attacked in connection with his plan to testify about another
investigation in which he was involved as an undercover
agent.

The evidentiary ruling was made at trial in the following
circumstances. According to the evidence, the police never
observed Robinson while inside the restaurant in which the
counterfeit drug transactions allegedly took place, and they
never observed the defendant or his vehicle on the restaurant
premises around the crucial time. The defendant faced obvi-
ous difficulties in mounting any defense other than denial as
he was not arrested or alerted to the allegations against him
until four months after the alleged incidents. Robinson's
credibility, therefore, was the critical issue. Testimony from
Framingham police officers was allowed, over objection, sug-
gesting that Robinson was truthful and well-motivated, and
that he had been helpful in other investigations. In this con-
text, Robinson's testimony about the defendant's alleged
threat was likely to have had a significant impact on the jury.
If, on a different occasion before trial, Robinson had
fabricated a threat and attack related to his undercover work

and anticipated testimony for the Framingham police, his testimony that the defendant threatened him in connection with his anticipated testimony in the instant case would be highly suspect.

This is a case in which the right to a full defense was denied because excluded evidence "might have had a significant impact on the result of the trial. . . ." *Commonwealth v. Bohannon*, 376 Mass. 90, 94 (1978). I do not have to reach the question whether the precise holding in *Bohannon* is broad enough to encompass the facts of this case, however, because I think the excluded evidence had a rational tendency to prove Robinson's bias in favor of the police, and reasonable cross-examination for the purpose of showing bias is a matter of right. Compare *Commonwealth v. Martinez*, 384 Mass. 377, 380 (1981), and cases cited.

The evidence of Robinson's false claim of threat and injury to the Framingham police suggests a willingness on his part to lie to bolster a police investigation in which he was participating in an undercover capacity. If the jury had known that, for whatever reason, Robinson would go out of his way to fabricate evidence against a suspect, inferably to enhance his standing in the eyes of the Framingham police, they might well, on the basis of that evidence of bias, have had a reasonable doubt whether Robinson had also done so in the instant case.