Jerome TIBBS, Petitioner,

v.

Peter ALLEN, Respondent.

Civil Action No. 03–11918–WGY.

United States District Court,
D. Massachusetts.

May 10, 2007.

Annette C. Benedetto, Susanne G. Reardon, Office of the Attorney General, Boston, MA, for Respondent.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

## I. INTRODUCTION

Jerome Tibbs ("Tibbs") filed his habeas petition on October 2, 2003, alleging that his trial counsel was ineffective in defending him against charges of prison rape. Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 8] ("Petition"), at 3–4. The Massachusetts courts had held that he had waived this issue by failing to raise it on direct appeal. The United States District Court agreed when it considered his petition. The First Circuit vacated and remanded, noting that under Massachusetts law, ineffective assistance claims are generally not raised on direct appeal but rather for the first time in a motion for a new trial. On remand, the case was reassigned to this session of the Court for a determination on the merits of the ineffective assistance claims.

1. The respondent's supplemental answer [Docs. Nos. 21–23] is referred to as "S.A.—". The petitioner's record appendix on appeal

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 1994, a Middlesex County grand jury returned an indictment, charging Tibbs with two counts of rape. Report and Recommendation on Petition for Writ of Habeas Corpus [Doc. No. 39] at 1. Tibbs was appointed trial counsel. After trial counsel became ill, he received fresh trial counsel. R.A. 84–85.[1] A jury-waived trial before Justice Hiller Zobel commenced on March 25, 1997.

Mr. Tibbs presented a consent defense at trial. He presented testimony that he and the victim had been seen together on numerous occasions prior to the rape. Mr. Tibbs's neighbor in his housing unit testified that the victim came to talk to Mr. Tibbs at his cell shortly after the incident and that the victim's demeanor appeared "regular" at the time. According to Mr. Tibbs, the victim wanted to pursue a relationship with him, and came to Mr. Tibbs on the night of the rape, saying, "let's go upstairs and have sex." Mr. Tibbs also testified that he and the victim were the only two in the bathroom at the time of the rape and that the victim checked the hallway twice to make sure no one was coming.

*Id.* at 3. Justice Zobel chose not to credit Tibbs's consent defense. Instead, Justice Zobel found Tibbs guilty on the two charges of rape. Petition at 2. In so finding, Justice Zobel could have reached the following factual conclusions:

Mr. Tibbs met the victim [in prison] near the end of April 1994. On the evening of May 26, 1994, during "movement," Mr. Tibbs followed the victim into a bathroom. As the victim was preparing to leave the bathroom, he was

from the denial of his second motion for a new trial is referred to as "R.A.—".

grabbed by the hair and around the waist. The victim turned around and saw Mr. Tibbs. Three or four other inmates had entered the bathroom, and were standing behind Mr. Tibbs. Mr. Tibbs forced the victim into a bathroom stall, telling the victim that they were going to have sex. The victim repeatedly asked Mr. Tibbs to leave him alone. Mr. Tibbs pulled down the victim[']s sweat pants and underwear and inserted his finger into the victim's rectum. Mr. Tibbs removed his finger and inserted his penis into the victim's rectum. After he was done, Mr. Tibbs immediately left the bathroom with the other inmates. The victim dressed himself and left the bathroom soon thereafter.

After the victim exited the bathroom, he told two other inmates that he had been raped. At approximately 10:50 p.m. that night, the officer on duty in the victim's housing unit was informed that the victim had been raped. The officer brought the victim to the officers' area, where the victim was shown a book which contained photographs of all the inmates. The victim identified Mr. Tibbs as his assailant. The officers then brought the victim to the hospital for examination.

Report and Recommendation at 2–3.

Justice Zobel sentenced Tibbs to six to eight years on the first count of rape, and to five years probation on the second count, with the sentences to be served consecutively. Petition at 2. The Massachusetts Appeals Court summarily affirmed Tibbs's conviction. *Commonwealth v. Tibbs*, 47 Mass.App.Ct. 1113, 714 N.E.2d 376 (1999). The Supreme Judicial Court thereafter denied Tibbs's application for further appellate review. *Commonwealth v. Tibbs*, 720 N.E.2d 469 (Mass.1999).

Tibbs then filed a motion for new trial, claiming ineffective assistance of trial counsel. Justice Zobel ruled that Tibbs had waived his claims due to failure to present them in a direct appeal. *Commonwealth v. Tibbs*, 51 Mass.App.Ct. 1104, 752 N.E.2d 242 (2001). The Appeals Court affirmed the denial of the motion on the ground that Tibbs had waived the claims. *Id.* In footnote, the court stated that with respect to the substance of the claims, it adopted the reasoning that the Commonwealth had set forth in its brief. *Id.* n. 1. The Supreme Judicial Court denied Tibbs's subsequent application for further appellate review. *Commonwealth v. Tibbs*, 434 Mass. 1105, 752 N.E.2d 241 (2001).

Tibbs then filed a second motion for new trial alleging that his appellate counsel was ineffective for failing to raise the trial counsel's ineffectiveness in his direct appeal. Tibbs also renewed his argument that trial counsel was ineffective. *Commonwealth v. Tibbs*, 56 Mass.App.Ct. 1112, n. 1, 779 N.E.2d 166, n. 1 (2002). Justice Zobel denied this motion. The Appeals Court affirmed. *Id.* The Appeals Court held that Tibbs had waived the argument that appellate counsel was ineffective by failing to raise it in his first motion for a new trial. *Id.* The court also noted that it had previously held that the ineffective assistance claims lacked merit. *Id.*

Tibbs filed a petition for writ of habeas corpus in the United States District Court. Tibbs alleged that his trial counsel was ineffective in four ways: (1) waiving his right to a jury trial; (2) waiving the right to a speedy trial; (3) failing to investigate claims, present evidence, and interview witnesses; and (4) failing to object to his in-court identification. Petition at 3–4.[2]

---

**2.** Tibbs raised several other claims in his petition that have been resolved against him and are therefore not before this Court.

Magistrate Judge Alexander issued a report and recommendation that the district court deny the petition on the ground that Tibbs had waived these four claims by failing to raise them on direct appeal from his conviction. Report and Recommendation at 11–13. Judge Tauro adopted the report and recommendation and denied the petition.

On appeal, the First Circuit granted a certificate of appealability "with respect to petitioner's claims of ineffective assistance of counsel, excised of the frivolous contention regarding his counsel's performance during in court identification of petitioner by his accuser." *Tibbs v. Allen,* 06–1392 (1st Cir. Oct. 19, 2006). The First Circuit based its conclusion on the recent decision in *Commonwealth v. Zinser,* 446 Mass. 807, 847 N.E.2d 1095 (2006), which held that under Massachusetts law, claims of ineffective assistance are expected to be raised by a motion for a new trial and are not waived merely because they are left out of a defendant's direct appeal. *Tibbs v. Allen,* 06–1392 (1st Cir. Aug. 8, 2006). On remand, the case was redrawn to this session of the Court.

## III. DISCUSSION

### A. Standard for Review

■ The Antiterrorism and Effective Death Penalty Act ("AEDPA") constrains "the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). If, however, the petitioner raised federal claims in state court and the state court did not address the merits, federal courts are to conduct de novo review. *Lynch v. Ficco,* 438 F.3d 35, 44 (1st Cir. 2006); *Fortini v. Murphy,* 257 F.3d 39, 47 (1st Cir.2001). This Court must therefore

determine the nature of the Appeals Court's holdings to determine the standard for review.

The Appeals Court rejected Tibbs's ineffective assistance claims on the procedural ground that Tibbs had failed to raise the claims on direct appeal. *Tibbs,* 51 Mass. App.Ct. at 1104, 752 N.E.2d 242. The court went further, however, and stated that "with respect to the substance" of the claims, it "adopt[ed] the Commonwealth's reasoning" set forth in its brief. *Id.* n. 1. When Tibbs returned before the Appeals Court on his second motion for a new trial, the court noted that it had already determined that the ineffective assistance claims lacked merit. 56 Mass.App.Ct. at 1112, 779 N.E.2d 166.

■ In the brief whose arguments the Appeals court adopted, the Commonwealth analyzed Tibbs's ineffective assistance claim under the rubric set forth in *Commonwealth v. Saferian,* 366 Mass. 89, 315 N.E.2d 878 (1974). S.A. Vol. II, Ex. 6, at 17–34. This Court must analyze Tibbs's claim under the test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Supreme Judicial Court, however, has held that if "the *Saferian* test is met, the Federal test is necessarily met as well." *Commonwealth v. Fuller,* 394 Mass. 251, 256 n. 3, 475 N.E.2d 381 (1985); *see also Scarpa v. DuBois,* 38 F.3d 1, 7–8 (1st Cir.1994). Consequently, the Appeals Court's *Saferian* analysis implicitly subsumes analysis under *Strickland.* This Court must therefore accord the Appeals Court the deference that AEDPA requires.

Although some judges now question the constitutionality of AEDPA on the ground that its interference with the fact-finding function of the federal courts constitutes a violation of the separation of powers, *see Irons v. Carey,* 479 F.3d 658, 665–67 (9th

Cir.2007) (Noonan, J., concurring), Tibbs raises no such challenge. Consequently, this Court will not disturb the Appeals Court's determination on the merits unless Tibbs demonstrates that his claim falls into one of the narrow categories set forth in the statute. *See* 28 U.S.C. § 2254(d).

■ A state-court decision is "contrary to" clearly established Supreme Court precedent only in two instances: (1) "if the state court applies a rule that contradicts the governing law set forth in" Supreme Court cases; or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405–06, 120 S.Ct. 1495. Relief is also available if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. The application of a legal rule will be deemed unreasonable if there is "some increment of incorrectness beyond error" that is "great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *Norton v. Spencer*, 351 F.3d 1, 8 (1st Cir. 2003) (quoting *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir.2002)).

### B. The Ineffective Assistance Claims

Tibbs's claims of ineffective assistance of counsel are governed by the principles established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, Tibbs must establish: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that prejudice resulted. *See id.* at 687–88, 694, 104 S.Ct. 2052. With respect to the first prong, the petitioner must show that counsel failed to "bear such

skills and knowledge as will render the trial as a reliable adversarial testing process." *Scarpa*, 38 F.3d. at 8 (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. The petitioner must show both deficient performance and prejudice; otherwise "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. 2052.

### 1. The Jury Waiver Claim

■ Tibbs claims that, in the months leading up to his trial, he repeatedly informed his trial counsel that he desired to have a trial by jury. Petition, Attach. B, at 7; R.A. 51. Tibbs further claims that, just before trial began, trial counsel informed him that Justice Zobel had signaled to trial counsel that if Tibbs waived his right to a jury trial, Justice Zobel would acquit him. *Id.* Tibbs claims that, as a result, he agreed to forego his right to a jury. *Id.* at 8. Justice Zobel, however, has unequivocally denied the suggestion that he gave petitioner any idea that his chances of acquittal would improve if he waived his right to a jury. R.A. 186. Trial counsel denies having any such conversation with Judge Zobel. R.A. 48–49. Rather, trial counsel stated that he based his advice on the fact that Justice Zobel had called Tibbs to the bench to give a colloquy about the difference between a jury trial and a jury-waived trial. R.A. 51, 58. Trial counsel stated that he thought that this colloquy was unusual. *Id.* Finally, trial counsel stated that he considered his belief that "Middlesex juries are tough." R.A. 51. In the aftermath of the

guilty verdict, trial counsel submitted a cursory affidavit stating that he did "persuade and unduly influence" Tibb's decision to waive his right to jury trial and that this advice was a "serious misjudgment" on his part. R.A. 43.

This Court must presume that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. The court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* In the instant case, notwithstanding the trial counsel's statements after the fact, the trial counsel's advice at the time to forego trial by jury did not clearly fall outside the scope of reasoned professional judgment. Trial counsel reasonably could have believed that Tibbs would fare better before a judge in the light of his belief that "Middlesex juries are tough." Accordingly, this Court holds that the state court did not clearly misapply established Supreme Court precedent.

### 2. The Speedy Trial Claim

■ Tibbs next claims that his trial counsel was ineffective in failing to secure his right to a speedy trial. Petition at 5. Tibbs was indicted on September 28, 1994 and not brought to trial until March 25, 1997. According to counsel, the trial was delayed in part because Tibbs's first trial counsel withdrew due to illness and a co-defendant's counsel had to withdraw as a result of a conflict and new counsel needed time to prepare for the case. R.A. 84–85. There were further scheduling problems due to the involvement of five attorneys in the case. R.A. 150. Tibbs filed no objections to any of the continuances.

Tibbs states that he asked his lawyer to file speedy trial motions. Petition, App. B,

at 6; R.A. 62–63. The trial counsel disputes this account, however. R.A. 84–85. Further, Tibbs wrote a letter to the counsel expressing a hope that his trial would be continued. R.A. 104. In the letter, Tibbs stated, "due to the extensive time span in bringing me to trial (from the night of the alleged crime) I can no longer remember certain details that may be detrimental to the case and my freedom. Surely I can't [be] tried (in a case where it's one person['s] word against the other) if I can't remember!?!" *Id.*

■ In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court has established a balancing framework for considering speedy trial claims. Four factors are to be considered: (1) the length of delay; (2) the reasons for delay; (3) the timeliness and frequency of the defendant's assertion of the right to a speedy trial (though failure to assert the right may be excused by incompetent counsel); and (4) the extent to which the defendant was prejudiced by the delay attributable to the state. *Id.* at 529–32, 536, 92 S.Ct. 2182; *Rashad v. Walsh*, 300 F.3d 27, 33–34 (1st Cir.2002). With respect to the fourth prong, the defendant generally "bears the burden of alleging and proving the specific ways in which the delay attributable to the sovereign unfairly compromised his ability to defend himself." *Rashad*, 300 F.3d at 34. When the defendant has incompetent counsel, failure to assert the right may be excused. *Barker*, 407 U.S. at 536, 92 S.Ct. 2182.

The delay in this case was considerable. Nonetheless, Tibbs did not object to any of the continuances, some of which were to allow counsel time to prepare for the case. Further, Tibbs expressed a hope that delays would aid his case because by then, he would no longer remember "certain details" that might be detrimental to his case. There is no evidence that Tibbs was

prejudiced by the delay. Consequently, this Court will not disturb the state court's denial of Tibbs's claim that his counsel was ineffective in failing to secure his right to a speedy trial.

### 3. The Failure To Investigate Claim

Finally, Tibbs asserts that his trial counsel was ineffective because he failed to investigate possible witnesses and secure documents. Tibbs asserts several specific grounds for his ineffective assistance claim, including the failure to develop evidence which would question the credibility of the victim and the failure to call certain witnesses who would support his theory of the case. Petition at 4.

██ First, Tibbs asserts that the victim alleged that he was once employed with the South Attleboro Fire Department, where he came to know one Beth Sequinn, supposedly a nurse at the prison that the victim spoke to following the rape. The victim allegedly told Sequinn that his father was convicted for sexually abusing him as a child. Petition, Attach. B, at 4.

Trial counsel knew about the prior allegation of rape but stated that he had no "firm basis" to investigate whether the prior allegation was true or false. R.A. 54–55. Trial counsel did file a motion pursuant to *Commonwealth v. Bishop*, 416 Mass. 169, 617 N.E.2d 990 (1993),[3] to obtain the victim's psychiatric and medical records. R.A. 54. Justice Zobel denied this motion. R.A. 166. Trial counsel further stated that he had no reason to investigate Beth Sequinn because the defense had a medical report from the hospital. R.A. 56. Trial counsel also stated that he saw no reason to investigate whether the

complainant had ever worked for the fire department. R.A. 56–57.

Tibbs states that after he was convicted, he conducted his own investigation and received a letter from the fire department that no one by the victim's name ever worked there. Petition, Attach. B, at 9; R.A. 156. Tibbs states that his investigation further revealed that there is no person by the name of Beth Sequinn. Petition, Attach. B, at 9. Tibbs also alleges that he could not obtain conviction records of anyone with the victim's surname and takes this to mean that the victim's prior complaint of rape was false. *Id.*

██ The prior false allegation of rape is an issue that resonates in the courts of the Commonwealth. *See Commonwealth v. Joyce*, 382 Mass. 222, 229, 415 N.E.2d 181 (1981) ("The right to cross-examine a complainant in a rape case to show a false accusation may be the last refuge of an innocent defendant."); *cf. Commonwealth v. Dwyer*, 448 Mass. 122, 139–50, 859 N.E.2d 400 (2006) (establishing the present procedure for confronting the perennial problem of reconciling the defendant's need for discovery and the statutorily protected privilege covering communications made to rape crisis counselors of intensely private matters). Consequently, Massachusetts law permits, in limited instances, impeachment by prior false allegations of rape. *Commonwealth v. Bohannon*, 376 Mass. 90, 95, 378 N.E.2d 987 (1978); *see also Commonwealth v. Stockhammer*, 409 Mass. 867, 875, 570 N.E.2d 992 (1991). Such evidence may be admissible in a rape case when the central issue is whether the alleged victim consented to the acts and the alleged victim is the only witness on the issue of consent. *Bohannon*, 376 Mass. at 94, 378 N.E.2d 987. The

---

**3.** *Bishop* has since been abrogated by *Commonwealth v. Dwyer*, 448 Mass. 122, 859

N.E.2d 400 (2006).

evidence may be particularly likely to have a significant impact on the credibility determination when the complainant's testimony is "inconsistent and confused." *Id.* at 95, 378 N.E.2d 987. Such evidence is admissible, however, only when there is a pattern of prior false accusations; one false accusation does not a pattern make. *Commonwealth v. LaVelle,* 414 Mass. 146, 152 n. 4, 605 N.E.2d 852 (1993).

In the instant case, the victim's testimony was consistent. The victim was also not the only witness to testify against Tibbs. Further, there was no pattern of prior false allegations since the victim made, at the very most, one prior false accusation. Consequently, even if trial counsel had investigated the prior allegation of rape and offered proof of its falsity, trial counsel would not necessarily have been able to cross-examine the alleged victim on this issue. This Court therefore holds that the state courts did not clearly err in denying Tibbs's ineffective assistance claim on this ground.

▉▉▉▉ Tibbs also claims that his counsel was ineffective in failing to investigate, interview, or call several witnesses. "The decision whether to call a particular witness is almost always strategic.... Where the prosecution's case is less than compelling ..., the risk of 'rocking the boat' may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony." *Lema v. United States,* 987 F.2d 48, 54 (1st Cir.1993). Counsel has "wide latitude" in making such tactical decisions. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

At trial, defense counsel proceeded on the theory that the alleged rape was actually consensual sex. Trial counsel called two witnesses in an effort to impeach the victim's credibility by showing that the victim pursued a relationship with the petitioner in the weeks leading up to the rape.

Moreover, Tibbs himself testified that he and the victim had a consensual relationship. Any additional testimony merely would have bolstered the case already put on by the defense or further impeached the victim's testimony. As a result, trial counsel's decision not to call additional witnesses did not prejudice Tibbs's case in any substantial way. The Appeals Court's finding that counsel's failure to call these witnesses was not constitutionally ineffective was therefore not an unreasonable application of *Strickland.*

## IV. CONCLUSION

Tibbs has not established that the Appeals Court's decision contradicted the governing law on ineffective assistance of counsel as set forth by *Strickland.* Accordingly, Tibbs's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus [Doc. No. 8] is DENIED.

SO ORDERED.