Brian CAVITT, Petitioner,

v.

James SABA, Superintendent, Respondent.

Civil Action No. 1:12–cv–11700–WGY.

United States District Court, D. Massachusetts.

Signed Oct. 31, 2014.

Brian Cavitt, South Walpole, MA, pro se.

Anne Marie Thomas, Office of the Attorney General, Boston, MA, Jennifer L. Sullivan, Office of the Attorney General, Worcester, MA, for Respondent.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

Brian Cavitt ("Cavitt") brings this pro se petition seeking a writ of habeas corpus pursuant to 28 U.S.C. section 2254 ("section 2254"). Pet. 28 U.S.C. § 2254 Writ Habeas Corpus Person State Custody ("Pet."), ECF No. 6. Cavitt presents four grounds for relief: (1) whether the "[j]udge erred in denying [a] motion for new trial where trial counsel failed to pursue suppression of a pair of sneakers, notwithstanding a lack of probable cause for search and seizure," *id.* at 6; (2) whether the "[j]udge erred in denying [a] motion to suppress evidence where the search warrant affidavit was not supported by probable cause because the veracity of an 'unknown' citizen informant was not adequately demonstrated," *id.* at 8; (3) whether the "[j]udge erred in denying [a] motion to suppress a photographic identification made [by] a 13[-]year-old witness that was a result of undue suggestion by police," *id.* at 9; and (4) whether the "[j]udge erred in allowing [the] introduction of inconclusive [DNA] evidence [without] the requisite explanatory statistical support," *id.* at 11. James Saba ("Saba"), Cavitt's immediate custodian, opposes the petition in its entirety. Resp't James Saba's Mem. Opp'n Brian Cavitt's Pet.

Writ Habeas Corpus ("Saba's Opp'n"), ECF No. 35.

### A. Procedural Posture

Cavitt filed his petition for a writ of habeas corpus on October 9, 2012, raising eight grounds for relief. Pet. Saba moved to dismiss the petition for failure to exhaust state court remedies on four of the eight grounds on December 3, 2012. Resp't's Mot. Dismiss Failure Exhaust State Ct. Remedies, ECF No. 13. On January 7, 2013, the Court granted the motion and entered an order of dismissal. Order, ECF No. 15; Order Dismissal, ECF No. 16. Cavitt moved for reconsideration and asked the Court for permission to withdraw his unexhausted grounds for relief, Mot. Recons. Habeas Corpus Pet., ECF No. 17, and on January 31, 2013, the Court entered the following order: "Upon reconsideration ground[s] 5–8 are unequivocally waived and the case may proceed on counts 1–4 alone." Elec. Order, Jan. 31, 2013, ECF No. 18.

On February 15, 2013, Saba presented his answer to the habeas petition. Resp't's Answer, ECF No. 25. On October 21, 2013, Cavitt filed a memorandum of law in support of his petition. Pet'r's Mem. Law Supp. Pet. Habeas Corpus ("Cavitt's Mem."), ECF No. 32. Saba then filed his opposition on December 12, 2013, Saba's Opp'n, to which Cavitt replied one week later, Pet'r Brian Cavitt's Reply Resp't James Saba's Mem. Opp'n Pet'r's Pet. Writ Habeas Corpus, ECF No. 36.

### B. Facts [1]

On May 5, 2006, a man, later identified as Cavitt, robbed a Western Union office

---

1. The Court relies on the factual background set out by the Massachusetts Supreme Judicial Court's opinion addressing Cavitt's direct appeal and subsequent motion for a new trial.

*Commonwealth v. Cavitt,* 460 Mass. 617, 953 N.E.2d 216 (2011). These facts are presumed to be correct under 28 U.S.C. § 2254(e)(1).

located inside a supermarket in Springfield; the same day, fire officials investigating smoke coming from a nearby housing complex discovered the bodies of a man and a woman who had been stabbed to death. *Commonwealth v. Cavitt*, 460 Mass. 617, 618, 620, 953 N.E.2d 216 (2011). On June 30, 2006, a grand jury returned indictments against Cavitt for two counts for murder, and one count each for arson of a dwelling house, armed robbery while masked, assault and battery, and carjacking. *Id.* at 618, 953 N.E.2d 216; Saba's Opp'n 2. On February 1, 2007, Cavitt filed a motion to suppress evidence—a pair of sneakers—seized by the police during a search of the apartment where he was staying and a motion to suppress two photographic identifications. *Cavitt*, 460 Mass. at 618, 953 N.E.2d 216; Saba's Opp'n 2. The Massachusetts Superior Court denied both motions on June 14, 2007. *Cavitt*, 460 Mass. at 618, 953 N.E.2d 216; Saba's Opp'n 2.

On December 11, 2007, a jury found Cavitt guilty of both charges of murder in the first degree on theories of deliberate premeditation, extreme atrocity or cruelty, and felony murder; they also found him guilty of the charges of arson of a dwelling house, armed robbery while masked, and assault and battery, while finding him not guilty on the carjacking charge. *Cavitt*, 460 Mass. at 618, 953 N.E.2d 216; Saba's Opp'n 2. Judge Carhart then sentenced Cavitt to serve two consecutive terms of life in prison, a term of ten to fifteen years in prison concurrent with the first life sentence, a term of twenty to twenty-five years after the second life sentence, and a term of two years concurrent with the first life sentence. Saba's Opp'n 2–3.

 Three days later, Cavitt filed a motion to revise and revoke his sentence, but it was denied on January 7, 2008. Saba's Opp'n 3. After filing a timely notice of a direct appeal, Cavitt also filed a motion for a new trial, "alleging ineffective assistance of trial counsel based on counsel's failure to pursue the suppression of evidence." *Cavitt*, 460 Mass. at 618, 953 N.E.2d 216. Judge Carhart denied the motion on July 22, 2010. *Id.;* Saba's Opp'n 3. Cavitt's appeal from the denial of his new trial motion was then consolidated with his direct appeal, and on September 21, 2011, the Massachusetts Supreme Judicial Court affirmed the convictions and the denial of the new trial motion. *Cavitt*, 460 Mass. at 618–19, 636, 953 N.E.2d 216. Finally, on October 9, 2012,[2] Cavitt filed this petition for a writ of habeas corpus. Pet.

## II. ANALYSIS

### A. Standard of Review—Antiterrorism and Effective Death Penalty Act

 Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "habeas corpus review of claims previously adjudicated in state court is both limited

---

*See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir.2002).

2. Although Cavitt's petition was filed one year and eighteen days after the Supreme Judicial Court's opinion, it still is timely under 28 U.S.C. § 2244(d)(1)'s one-year limitation on habeas petitions: the one-year clock started running not at the time the Supreme Judicial Court entered its judgment, but at the end of the 90–day period when Cavitt could have petitioned the U.S. Supreme Court for a writ

of certiorari. *See* 28 U.S.C. § 2244(d)(1)(A) (stating that the one-year limit runs from "the expiration of the time for seeking [direct] review"); Sup. Ct. R. 13 (stating that petitions for the writ of certiorari must be filed within ninety days of entry of judgment); *Lawrence v. Florida*, 549 U.S. 327, 330, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (calculating one-year period from the date the Supreme Court denied certiorari).

and highly deferential." *Evans v. Thompson*, 465 F.Supp.2d 62, 66 (D.Mass.2006), *aff'd*, 518 F.3d 1 (1st Cir.2008); *see also Johnson v. Dickhaut*, 308 Fed.Appx. 454, 456 (1st Cir.2009). More specifically:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This 'highly deferential standard for evaluating state-court rulings' reflects the overarching structure of the federal habeas corpus scheme, which vests 'primary responsibility' for evaluating federal law claims raised in criminal trials in the state courts," on the presumption that state courts know and follow federal law. *Evans*, 465 F.Supp.2d at 66 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24, 27, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)).

▆▆▆ Accordingly, "[u]nder current Supreme Court precedent, habeas relief is not warranted if the state court's decision was merely erroneous or incorrect." *Id.* (citing *Woodford*, 537 U.S. at 27, 123 S.Ct. 357; *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). As a consequence of this high standard, it is not enough "that the state court 'failed to apply' clearly established Supreme Court law, or that the state court committed 'clear error,' or that the reviewing court is of the 'firm conviction' that the state court's ruling was erroneous." *Id.* (citations omitted).

▆▆▆ Thus, the habeas petitioner bears the burden of showing "that his claim falls into one of the narrow categories set forth in [section 2254(d) ]." *Id.* at 66–67. The first category regards decisions that were "contrary to, or involved an unreasonable application of, clearly established Federal law." [3] 28 U.S.C. § 2254(d)(1). As this Court has previously analyzed,

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495. The analysis under the "unreasonable application" clause makes relief available only if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. The application of a legal rule will be deemed unreasonable if there is "some increment of incorrectness beyond error" that is "great enough to make the decision unreasonable in the independent objective judgment of the federal court." *Norton v. Spencer*, 351 F.3d 1, 8 (1st Cir.2003).

*Evans*, 465 F.Supp.2d at 67 (alterations in original).

**3.** Because Cavitt does not challenge the state court decision under the "unreasonable determination of the facts" standard of section 2254(d)(2), the only relevant provision for the present case is the one contained in section 2254(d)(1).

## B. Standard of Review—Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the two-part test for a claim of ineffective assistance of counsel. The so-called *Strickland* prongs demand from the petitioner a showing that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) prejudice resulted from this error. *Id.* at 688–92, 104 S.Ct. 2052; *see also Hallums v. Russo*, 491 F.Supp.2d 161, 165 (D.Mass.2007).

Under the first prong, a petitioner must show that counsel has failed to employ "such skill and knowledge as will render the trial a reliable adversarial testing process." *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir.1994) (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052) (internal quotation marks omitted). Under the second prong, the petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

▮▮▮ In order to avoid the distorting effects of hindsight, the reviewing court's scrutiny of counsel's performance must be highly deferential. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689, 104 S.Ct. 2052; *see also Pagan v. Dickhaut*, 578 F.Supp.2d 343, 358 (D.Mass.2008) (applying the *Strickland* prongs and noting that "counsel's strategic choices are considered reasonable to the extent that they were based on reasonable investigation by the attorney"). Finally, "[t]he court must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Tibbs v. Allen*, 486 F.Supp.2d 188, 194 (D.Mass.2007) (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052).

▮▮▮ When a *Strickland* claim is raised on habeas review, the reviewing court must layer two deferential standards: "the AEDPA standard and the underlying standard applying the constitutional right asserted." *Garcia v. Roden*, 672 F.Supp.2d 198, 204 (D.Mass.2009); *see also Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.2001) ("The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted.").

## C. Cavitt's Grounds for Relief

### 1. Ground One

▮▮▮ In his first ground for relief, Cavitt claims that the trial "[j]udge erred in denying [a] motion for new trial where trial counsel failed to pursue suppression of a pair of sneakers, notwithstanding a lack of probable cause for search and seizure." Pet. 6. According to Cavitt, "[n]owhere in the warrant or accompanying affidavit does it describe what articles of clothing were to be seized.... Furthermore, the warrant requests 'footwear impressions,' not 'footwear.'" Cavitt's Mem. 2. In short, this ground for relief is rooted in the warrant's lack of particularity. *See id.* at 3. Moreover, Cavitt claims ineffective assistance of counsel, because, "had [the] trial attorney refiled a motion to suppress evidence, including red [and] white sneakers, on the grounds that the warrant and affidavit supporting [the] warrant [lacked particularity] to show probable cause, trial counsel would ha[ve] been successful." *Id.* at 6.

About this topic, the Massachusetts Supreme Judicial Court concluded as follows:

Based on our review of the four corners of [the affidavit supporting the warrant in question], we conclude that it set forth probable cause to search [the apartment where Cavitt was staying] for items of [Cavitt]'s clothing, including his red and white sneakers. It follows, therefore, that the seizure of the sneakers did not exceed the scope of the search warrant. Contrary to [Cavitt]'s argument, his trial counsel was not ineffective for failing to seek suppression on this basis. Further, in light of our conclusion, the fact that defense counsel did not renew his motion to suppress or file a motion for reconsideration after [the female stabbing victim]'s DNA was found on [Cavitt]'s sneakers did not constitute ineffective assistance where the sneakers were properly seized in the first instance.

*Cavitt*, 460 Mass. at 627–28, 953 N.E.2d 216.

The state court's conclusion is not contrary to clearly established federal law, nor did it involve an unreasonable application thereof. After laying out the proper standards for a finding of probable cause on a search warrant,[4] the court noted that "the information contained [in the affidavit] supports a conclusion that there was a nexus between the armed robbery . . . and the sneakers seized from LaVoice's apartment." *Id.* at 626, 953 N.E.2d 216. The court also noted that the affidavit contained information provided by the apartment's owner, Corrine LaVoice, who identified Cavitt, her boyfriend's brother, and linked him to the crimes. *Id.* at 627, 953 N.E.2d 216. As a result, the court found "there was a substantial basis for concluding that the clothes that [Cavitt] did not discard, including footwear, would be found at LaVoice's apartment." *Id.* Furthermore, the court observed that "[i]n light of the altercation between [Cavitt] and [a witness], it was reasonable to infer that trace evidence, including blood, tissue, or fragments of clothing, may have transferred between the men, including onto their shoes, and that such evidence would be relevant to the identification of [Cavitt] as the perpetrator of the armed robbery." *Id.*

■ Because the affidavit laid out probable cause for a search for Cavitt's sneakers (and the seizure of those sneakers was thus within the scope of the resulting warrant), the state court concluded that Cavitt's counsel did not provide ineffective assistance by not pursuing suppression of this evidence on this ground. *Id.* This Court rules that this represents a reasonable application of *Strickland* within the meaning of section 2254.[5] Accordingly, the first ground cannot support the

---

4. The court observed: "The Fourth Amendment to the Federal Constitution and art. 14 of the Massachusetts Declaration of Rights both require a magistrate to determine that probable cause exists before issuing a search warrant. Probable cause requires a substantial basis for concluding that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues. Review of the sufficiency of the search warrant application begins and ends with the four corners of the affidavit. In determining whether an affidavit justifies a finding of probable cause, the affidavit is considered as a whole and in a commonsense and realistic fashion; inferences drawn from the affidavit need only be reasonable and possible, not necessary or inescapable." *Cavitt*, 460 Mass. at 626, 953 N.E.2d 216 (internal citations omitted) (internal quotation marks omitted).

5. Where the first *Strickland* prong is not met—that is to say, counsel is not found ineffective—there is no reason to move forward to the second prong, because no prejudice to the petitioner possibly could be shown.

granting of relief in this habeas proceeding.

## 2. Ground Two

In his second ground for relief, Cavitt claims that the trial "[j]udge erred in denying [a] motion to suppress evidence where the search warrant affidavit was not supported by probable cause because the veracity of an 'unknown' citizen informant was not adequately demonstrated." Pet. 8. According to Cavitt, "[w]hile Corinne LaVoice wished to remain anonymous, her words were misrepresented in the affidavit for the search warrant." Cavitt's Mem. 8. Cavitt explains that "LaVoice never gave any corroborating reports of any crimes. Police officers intentionally misled the magistrate by representing the 'anonymous witness.' " *Id.*

This ground for relief is barred by the Supreme Court decision in *Stone v. Powell,* which held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).[6]

The First Circuit has observed that *Stone* "stands for the proposition that a federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims," while also finding "an exception for instances in which a habeas petitioner had no realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system." *Sanna v. Dipaolo,* 265 F.3d 1, 8 (1st Cir.2001).[7]

 Analyzing the scope of "full and fair opportunity to litigate," the First Circuit held that it means "that the state has made available to defendants a set of procedures suitably crafted to test for possible Fourth Amendment violations." *Id.* at 9. Therefore, where "a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of such a set of procedures, a federal habeas court lacks the authority, under *Stone,* to second-guess the accuracy of the state court's resolution of those claims." *Id.* Finally, the court clarified that "[t]he petitioner bears the burden of proving that his case fits within the contours of the exception." *Id.* at 8.

 Cavitt does not address this issue. He does not mention *Stone,* or why his case would be an exception to its applica-

---

**6.** It is worth noting that, in *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), the Supreme Court cabined the application of *Stone.* More precisely, the *Kimmelman* Court rejected the "argument that *Stone's* restriction on federal habeas review of Fourth Amendment claims should be extended to Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue." *Id.* at 382–83, 106 S.Ct. 2574. Accordingly, the Supreme Court decided that federal courts may grant habeas relief in ineffective assistance of counsel claims, even when the underlying attorney error relates to unconstitutional search and seizure. *Id.* at 383, 106 S.Ct. 2574. The

distinction is relevant in the present case, explaining why Cavitt's first ground for relief was not barred by *Stone.* While Cavitt's first proposed ground for relief was based on the ineffective assistance of counsel related to the search warrant—thus being in essence a Sixth Amendment claim—the present ground does not mention ineffective assistance of counsel, rendering it exclusively a Fourth Amendment claim and therefore barred by *Stone.*

**7.** The court also noted that the "exception survives the passage of the AEDPA," which took place twenty years after the Supreme Court's decision in *Stone. Sanna,* 265 F.3d at 8.

tion. Because he bears burden of proving the exception, his failure to address the issue is a sufficient reason for the Court to deny relief on this ground. Even if Cavitt had sought to meet his burden, however, it is clear from the record that he had a full and fair opportunity to litigate his Fourth Amendment claim in state court.

In fact, the Massachusetts Supreme Judicial Court carefully addressed the issue of the identity of the informing witness and found that the judge did not err in denying Cavitt's motion to suppress the evidence derived from this information. *Cavitt*, 460 Mass. at 628–30, 953 N.E.2d 216. As an initial matter, Cavitt had the opportunity to present his arguments on this point to the trial judge and to have the trial judge decide this question on its merits. *See id.* at 628, 953 N.E.2d 216. Furthermore, the Supreme Judicial Court properly reviewed the trial judge's decision, laying out the standards for assessing the reliability of citizen informants. *Id.* at 628–29, 953 N.E.2d 216 (noting that, "[a]s a general matter, when assessing the reliability of citizens who report apparent violations of the law, we accord more weight to the reliability of those who are identified," but also that "the reliability of citizen informants who are identifiable, but may not have been identified, is deserving of greater consideration than that of truly anonymous sources" (internal quotation marks and citations omitted)). Finally, the court analyzed the facts of the case and concluded that "[t]his citizen informant placed her anonymity sufficiently at risk such that her reliability was properly accorded greater weight than that of an unknown and truly anonymous source."

*Id.* at 630, 953 N.E.2d 216. Specifically, the court stressed that "she presented herself to the police in person[,] she provided her address, which officers could verify, and she told the detectives about her child," thus making her identifiable. *Id.* The court also concluded that "[t]he information provided by the citizen informant was detailed" and "corroborated by police knowledge of the [crime] and [Cavitt]'s subsequent escape from the scene." *Id.* Consequently, the court held that the motion to suppress had been properly denied. *Id.*

This is a sufficient showing for the purposes of *Stone* that Cavitt had a full and fair opportunity to litigate his Fourth Amendment claim before the state courts. Accordingly, even if this Court believed that the state court had decided the issue wrongly—which this Court does not—habeas relief could not follow on this ground. *See Sanna*, 265 F.3d at 9 ("Hence, the mistaken outcome of a state court suppression hearing, standing alone, cannot be treated as a denial of the opportunity fully and fairly to litigate a Fourth Amendment claim (and, thus, cannot open the door to federal habeas review).").

### 3. Ground Three

In his third ground for relief, Cavitt claims that the trial "[j]udge erred in denying [a] motion to suppress a photographic identification made [by] a 13 year-old witness that was a result of undue suggestion by police." Pet. 9. While Cavitt's argument is not entirely clear,[8] he essentially attacks the identification provided by Antonio Vergara ("Vergara").[9]

---

8. Unlike grounds one and two, grounds three and four were not discussed in Cavitt's memorandum in support of his petition due to his limited access to research material. Cavitt's Mem. 11. As a result, this Court can only rely

on Cavitt's initial petition to grasp the meaning of his argument.

9. During the state court proceedings, Cavitt filed a motion to suppress two photographic identifications: one made by John Ryan on

Because of the lack of argument in Cavitt's memorandum on this ground, and the opaque argument laid out on his initial petition, this Court relies on the discussion of the motion to suppress evidence as framed by the Massachusetts Supreme Judicial Court. According to the state court,

> Vergara viewed a series of photographs on a computer terminal at the detective bureau in an effort to identify the individual he had seen fleeing from the [supermarket]. After he finished looking through the photographs, Vergara got up and, as he was being led out of the detective bureau, looked over at a computer terminal being viewed by [another witness], saw a photograph of [Cavitt] which happened to be on the screen, and said, "That looks like the guy that I saw."

*Cavitt*, 460 Mass. at 631, 953 N.E.2d 216. Cavitt claimed that this identification was akin to a "one-on-one show-up" and thus constituted undue police suggestion, but the trial judge considered the identification to be "purely inadvertent." *Id.*

■ The standard of review in claims of this nature is governed by *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Under *Simmons*, Cavitt must show: "(1) that the identification procedure was impermissibly sugges-

tive and (2) that in the totality of the circumstances, a likelihood of irreparable misidentification exists." *DeLong v. Brady*, 723 F.Supp.2d 376, 394 (D.Mass.2010); *see also Manson v. Brathwaite*, 432 U.S. 98, 114–16, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (noting that "[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature" and finding that evidence should not be suppressed where a suggestive identification procedure did not, under the totality of the circumstances, create a substantial likelihood of irreparable misidentification).

■ In the present case, the Massachusetts Supreme Judicial Court relied on its own precedent and applied a standard of review similar to the one established by the Supreme Court in *Simmons*. See *Cavitt*, 460 Mass. at 632, 953 N.E.2d 216 ("For a motion to suppress a photographic identification to succeed, 'the defendant must show by a preponderance of the evidence that, in light of the totality of the circumstances, the procedures employed were so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law.' " (quoting *Commonwealth v. Miles*, 420 Mass. 67, 77, 648 N.E.2d 719 (1995))).[10]

May 6, 2006, and another made by Vergara on May 5, 2006. Before the Massachusetts Supreme Judicial Court, however, Cavitt attacked the denial only as to Vergara, and that court ruled that the trial judge had properly denied the motion to suppress the identification. *Cavitt*, 460 Mass. at 631–33, 953 N.E.2d 216. In the present habeas petition, Cavitt again attacks solely the identification made by Vergara, though he briefly addresses the other identification as well. Pet. 9–10.

10. Massachusetts law is in fact more favorable to a defendant than is federal law: the simple fact that the identification was made pursuant to an unnecessarily suggestive procedure suffices for suppression of the evi-

dence. In other words, under Massachusetts law, a defendant must only show the first of the two *Simmons* prongs. *See Commonwealth v. Walker*, 460 Mass. 590, 599 n. 13, 953 N.E.2d 195 (2011) ("Where the defendant satisfies this burden, the out-of-court identification is per se excluded as a violation of the defendant's right to due process under art. 12 of the Massachusetts Declaration of Rights. In contrast, under the Fourteenth Amendment to the United States Constitution, a motion judge must apply a two-step analysis to the question of admissibility. The judge asks first whether the eyewitness identification was obtained by a police procedure that was unnecessarily suggestive. If it was, the judge then asks whether, notwithstanding the

Applying the law to the case, the state court observed that:

> Here, the totality of the circumstances do not show by a preponderance of the evidence that Vergara's identification of [Cavitt]'s photograph was the product of unnecessarily suggestive police procedures. As defense counsel acknowledged at the suppression hearing, nothing was said or done by the police to direct Vergara's attention to the computer screen that was being viewed by [another witness]. Vergara simply looked around as he exited the detective bureau and observed [Cavitt]'s photograph on [the other witness]'s screen. As defense counsel further acknowledged, there was no evidence that Vergara overheard [the other witness] making any comments with regard to [Cavitt]'s photograph, which could have tainted Vergara's identification. Vergara's identification of [Cavitt]'s photograph plainly did not occur in circumstances that were unnecessarily suggestive.
>
> Contrary to [Cavitt]'s assertion, Vergara's observation of [Cavitt]'s photograph on the computer screen being viewed by [the other witness] was not a one-on-one showup identification. It was more akin to a display of a series of photographs, given that Vergara had been viewing thousands of photographs

on his own computer screen just minutes before leaving the detective bureau. We have concluded that Vergara's identification of [Cavitt]'s photograph was not the product of unnecessarily suggestive police procedures that were conducive to a mistaken identification. Accordingly, [Cavitt]'s motion to suppress photographic identifications was properly denied.

*Id.* at 632–33, 953 N.E.2d 216.

Cavitt cannot demonstrate that the state court's decision was contrary to clearly established federal law, or involved an unreasonable application thereof. Indeed, the state court's conclusion regarding the denial of the motion to suppress is perfectly in tune with the *Simmons* standard. Accordingly, Cavitt also fails on his third ground for habeas relief.

### 4. Ground Four

In his fourth and final ground for relief, Cavitt claims that the trial "[j]udge erred in allowing introduction of inconclusive [DNA] evidence [without] the requisite explanatory statistical support." Pet. 11. Once more, because Cavitt's memorandum is silent on this ground, the Court can rely solely on the cursory and confusing reasoning laid out by Cavitt in his petition. There, Cavitt seems to attack the introduction of inconclusive DNA evidence, which

---

unnecessarily suggestive procedure, the eyewitness identification was reliable under the totality of the circumstances. Because reliability is the linchpin, the identification, if found reliable, is admissible even where obtained through an unnecessarily suggestive procedure. The United States Supreme Court expressly rejected the per se rule of exclusion as going too far since its application automatically and peremptorily, and without consideration of alleviating factors, keeps evidence from the jury that is reliable and relevant.... [T]he standard for the admissibility of an identification under the Massachusetts Constitution is more favorable to a

defendant than the standard under the United States Constitution ....") (internal citations omitted) (internal quotation marks omitted).

Because the Massachusetts standard is more protective of defendants than is the its federal counterpart, then, a ruling that identification procedures complied with the state standard means that the procedures necessarily complied with the federal constitutional standard as well. Accordingly, this Court may still look to the Supreme Judicial Court's state law analysis as it evaluates the merits of Cavitt's federal constitutional claim in this habeas proceeding.

would "simply confuse[ ] that average layman who [sits] on a jury." *Id.* Going back to the Massachusetts Supreme Judicial Court's opinion, it seems that Cavitt attacks the introduction of inconclusive DNA evidence from a gold necklace found in the victims' apartment. *Cavitt,* 460 Mass. at 633, 953 N.E.2d 216.

Saba raises a procedural issue that would prevent the analysis of this ground. According to Saba, Cavitt's claim is procedurally defaulted, because failure to comply with Massachusetts's contemporaneous objection rule by "object[ing] at trial to the introduction of 'inconclusive' DNA evidence" constitutes an independent and adequate state ground for the Commonwealth's continued custody of Cavitt. Saba's Opp'n 29.

■■■■ When a state court decision rejecting a defendant's federal constitutional claim also rests on an independent and adequate state ground, a federal court cannot grant habeas relief for that particular federal claim. *Ainooson v. Gelb,* 973 F.Supp.2d 105, 114 (D.Mass.2013) (citing *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). "Habeas review is barred regardless of whether the state law ground is procedural or substantive." *Id.* When the relevant state law reason for denying relief is a defendant's failure to object at the proper time, such a failure constitutes a procedural default barring federal habeas relief "so long as the state court consistently applies its contemporaneous objection rule and has not waived it in the particular case by basing the decision on some other ground." *Id.* (internal quotation marks omitted). Massachusetts has routinely enforced its contemporaneous objection rule. *Id.*

■■■■ Courts may sometimes provide limited review of a claim without waiving it as a procedural default. In reviewing Cavitt's claim on this issue, the Supreme Judicial Court applied a miscarriage of justice standard; the First Circuit has repeatedly held that this form of review does not constitute a waiver of a default for federal habeas purposes. *See Burks v. Dubois,* 55 F.3d 712, 716 n. 2 (1st Cir.1995).

■■■■ In the present case, the Massachusetts Supreme Judicial Court noted Cavitt's failure to object at trial to the introduction of inconclusive DNA evidence and proceeded to a review of the claim under the miscarriage of justice standard. *Cavitt,* 460 Mass. at 635, 953 N.E.2d 216 ("[T]he testimony . . . regarding the inconclusive DNA evidence obtained from the gold necklace should not have been admitted. Given that there was no objection from defense counsel, we consider whether the admission of such testimony created a substantial likelihood of a miscarriage of justice."). In the end, the state court ruled that "the DNA testimony in the present case was wholly neutral," and that "statistical evidence to explain the import of this particular DNA testimony would [thus] not come into play." *Id.* at 635–36, 953 N.E.2d 216. Accordingly, the court concluded that "the error in admitting the inconclusive DNA evidence relating to the necklace would not have influenced the jury's conclusion, was not sufficient to demonstrate ineffective assistance of counsel, and did not create a substantial likelihood of a miscarriage of justice." *Id.* at 636, 953 N.E.2d 216.

Therefore, the Massachusetts Supreme Judicial Court relied on an independent and adequate state ground when it: (1) ruled that Cavitt had defaulted this claim by failing to object to the introduction of this evidence at trial and (2) briefly analyzed those forfeited claims only to determine if there was a substantial risk of a miscarriage of justice. *See Ainooson,* 973 F.Supp.2d at 115. Accordingly, this Court

is prevented from reviewing the fourth ground of relief sought by Cavitt.[11]

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Cavitt's petition for a writ of habeas corpus, ECF No. 6.

**SO ORDERED.**

---

**11.** As a final note, the Court observes that Cavitt could have attempted to excuse his procedural default by showing ineffective assistance of counsel. *See Ainooson*, 973 F.Supp.2d at 116. Although Cavitt argued such an excuse before the Massachusetts Supreme Judicial Court, *Cavitt*, 460 Mass. at 633, 953 N.E.2d 216, he did not pursue it in the present habeas petition. Had he done so, however, this Court could not find for him. As the Massachusetts Supreme Judicial Court held, there was no prejudice to Cavitt from the introduction of the inconclusive DNA evidence, because the neutrality of the evidence meant it could not have affected the jury's conclusion. *Id.* at 635–36, 953 N.E.2d 216. As a result, the fact that counsel did not pursue suppression of the evidence does not amount to ineffective assistance, as defined in *Strickland* and discussed supra.